IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KIMBERLY LADNIER**                                                              **PLAINTIFF**

v.                                                                    CAUSE NO. 1:21-cv-407-LG-RPM

**STATE FARM FIRE & CASUALTY**
**COMPANY**                                                                       **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**</u>
<u>**DENYING IN PART DEFENDANT'S MOTION TO STRIKE ROBERT G.**</u>
<u>**SCOTT**</u>

**BEFORE THE COURT** is the [39] Motion to Strike Robert G. Scott filed by Defendant, State Farm Fire & Casualty Company ("State Farm"). The Motion is fully briefed. After due consideration of the parties' submissions, the record in this matter, and the applicable law, the Court finds that the Motion to Strike Robert G. Scott should be granted in part.

## BACKGROUND

In this insurance dispute, Plaintiff, Kimberly Ladnier, alleges that Defendant State Farm is in breach of an insurance policy issued to her covering a property located in Gulfport, Mississippi. (*See generally* Compl., ECF No. 1). Plaintiff reports that, in October 2020, Hurricane Zeta made landfall and caused significant damage to the relevant property, "including, but not limited to, damage to the roof and siding as well as interior damage caused by water intrusion due to the external damages." (*Id.* ¶¶ 7-8).

After the storm, "Plaintiff promptly reported the loss to State Farm, who assigned it claim number 24-13B952C." (*Id.* ¶ 9). On November 16, 2020,

Defendant conducted an inspection of the property, which Plaintiff describes as brief, inadequate and failing to account for the extent of the damage to her property. (*Id.* ¶ 10). Defendant subsequently paid out $511.19 for damage to "Other Structures/ Dwelling Extension" and tree debris removal, allegedly refusing to pay for damage to the Dwelling itself. (*Id.*).

Dissatisfied, Plaintiff retained independent adjuster Robert Scott, who "documented $87,019.77 in damages to the Dwelling, $5,628.36 in damage to Other Structures, and $14,737.42 for contents manipulation and management." (*Id.* ¶¶ 12-13). Plaintiff submitted this estimate to Defendant and made a demand under her policy for further benefits. (*Id.* ¶ 13). In response, Defendant's agents returned to the property and conducted further inspection, resulting in "$1,893.10 for the Dwelling, $984.94 for Other Structures/ Dwelling Extension, and $219.47 for tree debris removal." (*Id.* ¶ 15). Plaintiff reports that "[n]o further payments have been made." (*Id.* ¶ 17). This lawsuit ensued.

The Complaint at issue was filed originally in this Court on December 21, 2021, claiming breach of contract, bad faith denial of coverage and delay in paying insurance proceeds, and seeking both contractual and extracontractual damages. (*See generally id.* ¶¶ 30-43). On January 18, 2023, Defendant filed two Motions which remain pending before the Court. In the subject [39] Motion to Strike, Defendant asks the Court to strike Robert Scott, Plaintiff's adjuster, as an expert witness, arguing that he lacks qualification, that he employs unreliable methods,

2

and that his testimony is otherwise unfairly prejudicial. The other filing, a Motion for Summary Judgment, will be resolved separately.

## DISCUSSION

**I.　MOTION TO STRIKE EXPERT WITNESS STANDARD**

Rule 702 of the Federal Rules of Evidence provides that an expert witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the proposed expert must prove by a preponderance of the evidence that the expert's proffered testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). "An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). In addition, "expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm.*,

3

*Inc.*, 509 U.S. 579, 591 (1993).  To be reliable, an expert's opinions must be based on sufficient facts or data and must be the product of reliable principles and methods.  Fed. R. Evid. 702(b), (c).  Ultimately, it is the court's responsibility "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

 Expert witness testimony should be excluded if the court "finds that the witness is not qualified to testify in a particular field or on a given subject."  *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 199 (5th Cir. 2016).  Rule 702 does not require an expert to be highly qualified to testify, however, the court will evaluate the witness's knowledge, skill, experience, training, or education with respect to the subject matter of the testimony.  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).  Generally, a lack of specialization should go to the weight of the evidence rather than its admissibility, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) (quoting *Daubert*, 509 U.S. at 596).  Thus "an expert witness is not strictly confined to his area of practice but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."  *Id.* (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

## II. MOTION TO STRIKE ROBERT G. SCOTT

### 1. Mr. Scott's Qualifications

First, Defendant takes issue with Mr. Scott's qualifications to testify as an expert on certain subjects. Plaintiff's expert disclosure anticipates that Mr. Scott will testify, *inter alia*, on "the claims adjusting timeline in this matter by the insurance company and its agents/ employees." (Pl.'s Rule 26(a)(2)(C) Expert Disclosures ¶ 1(a), ECF No. 39-7). Defendant argues that Mr. Scott is unqualified to render any opinions as to the handling of Plaintiff's insurance claim. Defendant excerpts Mr. Scott's deposition, in which he answers "No" when asked whether he is "an expert in the field of claim handling for an insurance company?" (Dep. Scott, 30:7-10, ECF No. 39-5). Defendant also points out that Mr. Scott did not review the whole of the claim file or the policy in this matter; rather he reportedly only read his "estimate and documentation." (*Id.* at 28:17-24; 51:11-15).

In response, Plaintiff seems to agree that "Mr. Scott has not been presented as an expert in claim handling—he has been designated to testify to the valuation of damages, scope of damages, and causal link between the loss event and damages incurred by the Property." (Pl.'s Mem. Opp. Def.'s Mot. Strike, at 9, ECF No. 44). The Court takes this admission, as well as Mr. Scott's denial of expertise as to insurance claim handling, as a concession from Plaintiff that he will not opine specifically on Defendant's handling of Plaintiff's claim. The Motion to Strike is therefore granted to this extent.

5

Further, Plaintiff points out that Mr. Scott's qualification has not been attacked as to his opinions on "the valuation of damages" or the "scope of damages." (*See* Pl.'s Rule 26(a)(2)(C) Expert Disclosures ¶ 1(a), ECF No. 39-7). She explains that Mr. Scott has been a licensed Mississippi public adjuster since 2019 and has been preparing property damage estimates on behalf of insurers and property owners using the Xactimate estimating software since 2017. (*See* Scott C.V., ECF No. 39-3; Dep. Scott, 14:23-15:11, ECF No. 44-1). He also has thirteen years' experience as an independent contractor and remodeler. (*Id.* at 12:19-14:13). He is certified in the Xactimate software and is a member of professional associations involved with estimating and adjusting, including the Property Loss Appraisal Network (PLAN). (*Id.* at 10:16-11:18; 25:1-26:25). These credentials have not been seriously assailed by Defendant. In the Court's opinion, Plaintiff has shown that Mr. Scott maintains the minimum qualification needed to render opinions on the valuation and scope of damages. *See Credeur Trust v. Liberty Mut. Ins. Co.*, 598 F. Supp. 3d 474, 477 (W.D. La. Apr. 12, 2022) (admitting expert on damages and causation where he was a licensed public adjuster since 2019, a member of PLAN, and a general residential and commercial contractor with years of experience).

Defendant also claims that Mr. Scott is not qualified to render opinions as to the cause of property damage because he stated that he prepared his report as an "estimator" rather than an "adjustor." (Dep. Scott, at 84:19-22; 15:20-24, ECF No. 39-5). In response, Plaintiff argues that Mr. Scott's description of his role as that of

6

an "estimator" is immaterial and does not affect his qualification to opine on causation. (Pl.'s Mem. Opp. Def.'s Mot. Strike, at 9, ECF No. 44). Plaintiff cites Mr. Scott's identification as an adjuster, which often requires determining the cause of property damage. (*See* Dep. Scott, 15:20-24, ECF No. 44-1). Plaintiff explains that Mr. Scott chose to describe his role in preparing the report as an "estimator" to address why he failed to include depreciation, not to disqualify himself from opining on causation. (*See id.* at 84:16-22).

> Courts regularly find that insurance and public adjusters are qualified to testify on damage-causation issues in insurance cases. It is a well-known fact that claims adjusters must estimate the damage caused by natural disasters and other casualties, because causation is a key factor in insurance-coverage determinations. Although experience in engineering could be helpful in evaluating weather-damage causation, it is not required and goes to the degree of expertise rather than whether an adjuster is qualified under Rule 702.

*Cooley v. State Farm Fire & Cas. Co.*, No. 3:22-CV-60-KHJ-MTP, 2023 WL 2481846, at *2 (S.D. Miss. Mar. 13, 2023) (collecting cases) (internal quotation marks, alterations, and citations omitted). Despite Defendant's insistence to the contrary,[1] the Court finds that Mr. Scott's precise capacity in the preparation of his report is immaterial, because it has provided no legitimate basis to disqualify Mr. Scott in

---

[1] Defendant argues that defining Mr. Scott's exact role is potentially consequential due to Miss. Code Ann. § 83-17-523, which would have required him as a public adjuster to obtain a contract with Plaintiff, and Defendant avers that no such contract exists. However, the issue of Mr. Scott's compliance with this ethical statute has not been briefed—it was raised for the first time in Defendant's rebuttal—and is not before the Court in any relevant sense on this *Daubert* Motion. Whether Mr. Scott has complied with this statute has no implication for his ability to provide expert testimony as an adjuster on the issue of causation.

either capacity.[2]

### 2. Mr. Scott's Methodology

Next, Defendant argues that Mr. Scott employed an unreliable methodology in rendering his opinions. Defendant takes issue with Mr. Scott's confessed uncertainty as to why he replaces Plaintiff's pine fencing with cedar (*see* Dep. Scott, at 68:18-24), why his estimate takes two samples from each room, suspecting the presence of lead or asbestos due to its age (*id.* at 69:20-71:6), why he includes a megohmmeter check for the electrical circuits due to some light malfunctions, but failed to check the bulbs (*id.* at 78:2-11), and why his estimate requires moving, cleaning, and disinfecting personal property where he separately admitted that not

---

[2] Defendant has also provided the Court with a notice of supplemental authority, citing this Court's opinion in a similar case. (*See* Mem. Opinion & Order, *Parker v. State Farm Fire & Cas. Co.*, No. 2:22CV45-HSO-BWR, ECF No. 57). In its ruling, the Court found that a proposed expert's "experience in adjusting and valuing damages does not automatically qualify him to ascertain the cause of Plaintiff's property damage, or to be able to distinguish one or more causes from one another." (*Id.*) (citing cases). However, in *Parker*, the proposed expert had no training or background "relating specifically to weather events, construction, or contracting," his report made no mention of causation, and the expert "testified that he never personally inspected Plaintiff's property." (*See id.* at 9-10). The Court specifically distinguished licensed adjusters with backgrounds in contracting and construction work, who may be qualified to opine on causation, from those without. (*Id.* at 10-11) (citing *Patton v. Metro. Lloyds Ins. Co. of Tex.*, No. 5:21-CV-074-H, 2022 WL 2898946 (N.D. Tex. Feb. 14, 2022); *Credeur Trust*, 598 F. Supp. 3d at 474). To the extent Defendant raises a similar argument, the Court notes that Mr. Scott's CV recalls his experience in the realm of independent contracting and remodeling residential properties. (*See* Scott C.V., ECF No. 39-3). He also details his residential contracting and remodeling experience, including roof installation, in his deposition. (*See* Dep. Scott, at 12:19-13:18, ECF No. 44-1). Further, Scott did in fact physically inspect Plaintiff's residence. Thus, the Court finds comparisons to the *Parker* case unhelpful under the facts presented.

8

all the property got wet during the storm (*id.* at 71:7-72:13).

Plaintiff responds that disagreement over these four items on the estimate does not undermine Scott's overall methodology—namely, physically inspecting the property, documenting its condition and damages, and estimating damages using the Xactimate software. (Pl.'s Mem. Opp. Def.'s Mot. Strike, at 12-13, ECF No. 44). Plaintiff concedes that the price for cedar fencing was an isolated error in the report but claims that the other challenges constitute particularized disputes with the estimate better suited for cross-examination and resolution by the jury. (*Id.* at 12-13). Defendant replies that the methodological impropriety is Mr. Scott's "decisions to include or not include various items in his estimate." (Def.'s Reply Supp. Mot. Strike ¶ V, ECF No. 47).

Here, the Court agrees with Plaintiff that Mr. Scott did employ a standard methodology in arriving at his opinions. *See Mason v. Texas Farmers Ins. Co.*, No. 4:09CV03134, 2011 WL 10845765, at *2 (S.D. Tex. Dec. 1, 2011) (finding that a public adjuster expert employed a standard methodology where he "visually inspected the home, confirmed the measurements, took photographs, examined and documented property damage on both the interior and exterior, reviewed reports" from other experts, and "prepared his assessment and report, using a standard industry estimating tool called Xactimate"). In all relevant respects, Mr. Scott utilized largely the same methodology here. To the extent that Defendant raises valid concerns with certain items in the estimate, such issues are better suited for

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," which "are the traditional and appropriate means of attacking shaky but admissible evidence." *Wen Chyu Liu*, 716 F.3d at 168-69 (quoting *Daubert*, 509 U.S. at 596). Defendant will be permitted to raise such issues to the jury.

### 3. Evidentiary Value of Mr. Scott's Opinions

Finally, Defendant argues that Mr. Scott's testimony should be excluded because it is irrelevant and its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Here, Defendant invokes Mr. Scott's failure to account for depreciation in the property. (*See* Dep. Scott, at 84:14-22). This omission bears on the policy provision obligating Defendant to "pay only the actual cash value at the time of the loss of the damaged part of the property." (Policy, at 28, ECF No. 39-8). "Actual cash value" is defined in an endorsement to be "the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." (*Id.* at 44). Thus, claims Defendant, Mr. Scott's failure to account for depreciation renders his opinion irrelevant to the trier of fact, who is charged with determining whether Plaintiff is entitled to insurance proceeds and to what extent, which relies on a determination of actual cash value. (Def.'s Mem. Supp. Mot. Strike, at 13, ECF No. 40). Further, Defendant claims that such testimony may cause unfair prejudice, confuse the issues, or mislead the jury. (*Id.*).

Plaintiff responds that Mr. Scott's estimate contains figures for replacement cost value, which is a component of actual cash value as defined in the endorsement. (Pl.'s Mem. Opp. Def.'s Mot. Strike, at 15-16, ECF No. 44). Plaintiff thereby argues that Mr. Scott's estimates of the replacement cost value are relevant, probative and helpful as a figure which forms the basis of actual cash value determination. (*Id.* at 16). Plaintiff envisions that actual cash value will be determined by the factfinder from additional testimonial and photographic evidence of the age and condition of the property and Defendant's evidence of depreciation. (*Id.* at 16-17). Defendant replies that calculation of actual cash value should be guided by expert testimony, and Plaintiff has not offered any expert testimony on that subject, whether through Mr. Scott or someone else, and that any such undisclosed expert testimony should be excluded.[3] (Def.'s Reply Supp. Mot. Strike ¶¶ VIII-X, ECF No. 47).

The Court agrees with Plaintiffs that they may present evidence of replacement cost value, subject to evidence of depreciation. In support of its

---

[3] To the extent Plaintiff does intend to offer undisclosed expert testimony on depreciation, which is not clear, the Court will defer ruling on this issue to a Motion *in Limine* or trial. *See Santos v. Great Am. Ins. Co.*, No. 5:19CV83, 2021 WL 8945347, at *4 (S.D. Tex. Dec. 6, 2021) ("[T]he Court understands that Plaintiffs are not disputing that Poyner has not previously disclosed an opinion on depreciation. . . . Regardless, it is the Court's opinion that a *Daubert* motion is not the proper vehicle for a party to seek an order from the Court preventing an expert from *potentially* giving an opinion that was not properly disclosed before trial. . . . Defendant's motion to exclude Poyner's potential opinion about depreciation is DENIED.") (emphasis in original).

11

contention that evidence of replacement cost value may be submitted at trial, Plaintiff cites *United Servs. Auto Ass'n v. Lisanby*, a decision of the Mississippi Supreme Court finding that the trial court licitly permitted plaintiffs to introduce evidence of replacement costs. 47 So. 3d 1172, 1179-80 (Miss. 2010). Where the insurer argued that plaintiffs should have been "'required by the trial court to restrict their evidence to actual cash value of the loss,'" the Court noted that there was no "evidence in the record that the verdict was based on replacement costs alone, and the evidence adduced at trial included an actual cash value of $1.6 million." *Id.*; *see also Sanders v. Nationwide Mut. Fire Ins. Co.*, No. 1:07CV988-LTS-RHW, 2008 WL 5342116, at *2 (S.D. Miss. Dec. 17, 2008) ("Because replacement cost is a component of the calculation of actual cash value, evidence of replacement cost is admissible at trial.").[4] Likewise, here, there is no disagreement

---

[4] The parties are also divided on the case of *Ferrara Land Mgmt. Miss., LLC v. Landmark Am. Ins. Co.*, No. 1:19CV956-HSO-JCG, 2021 WL 5055671, at *4 (S.D. Miss. July 19, 2021). In this case, the policy explicitly provided that no replacement cost would be paid until after the lost or damaged property was actually replaced, which condition had not been met; hence, "any evidence of replacement cost [was] not relevant." *Id.* at *4 (citing *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06CV489-HSO-RHW, 2008 WL 3050417, at *8 (S.D. Miss. July 25, 2008)). The decision agreed that "[t]he Mississippi Supreme Court has found that it is not error to admit the evidence of replacement cost in order to establish actual cash value," *id.* (citing *Lisanby*, 47 So. 3d at 1179-80), but the *Ferrara* plaintiff "adamantly and repeatedly insisted that it [was] seeking only replacement cost damages," never displaying an intent to establish actual cash value. *Id.* Here, there is no evidence that *Ferrara*'s condition is relevant, and Plaintiff has stated its intention to introduce evidence of replacement costs as the factual basis of actual cash value. (*See* Pl.'s Mem. Opp. Def.'s Mot. Strike, at 16-17, ECF No. 44) ("Plaintiff nor Mr. Scott has attempted to present his RCV calculation of the damages as being the ACV. Additional evidence presented at trial, including testimony from Ms. Ladnier

12

that replacement cost value is a defined component of actual cash value. In the Court's opinion, Mr. Scott does not necessarily need to comment on depreciation for his opinion to be admissible. *See Ayoub v. Chubb Lloyds Ins. Co. of Tex.*, No. EP-13-CA-58, 2014 WL 12489692, at *1 (W.D. Tex. Apr. 29, 2014) (permitting an expert to testify only on the subject of replacement costs and not depreciation, although actual cash value would be determined by deducting depreciation therefrom); *see also Shadow Lake Mgmt. Co., Inc. v. Landmark Am. Ins. Co.*, Civ. No. 06-4357, 2009 WL 362103, at *2 (E.D. La. Feb. 9, 2009); *Atkins v. Lexington Ins. Co.*, Civ. No. 07-6977, 2008 WL 4457684, at *3 (E.D. La. Sep. 29, 2008); *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, Civ. No. 07-7965, 2009 WL 10687556, at *2 (E.D. La. Jan. 13, 2009). Therefore, and per the *Lisanby* case, Mr. Scott's opinion regarding replacement cost value is admissible as a component of actual cash value, subject to evidence of depreciation presented at trial.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [39] Motion to Strike Robert G. Scott filed by Defendant, State Farm Fire & Casualty Co., is hereby **GRANTED IN PART** as noted above. In all other respects the Motion is **DENIED.**

---

and potential other lay witnesses regarding the age and condition of various parts of the property, as well as photos of the property and damages included in Robert Scott's photo report, along with the terms of the insurance policy, will assist the jury in determining the ACV…").

**SO ORDERED AND ADJUDGED** this the 5th day of June, 2023.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE